### THIEL v. SOUTHERN PAC. CO.
No. 21780.

District Court, N. D. California, S. D.
Sept. 13, 1946.

See also 67 F.Supp. 934.

Allen Spivock and Philander B. Beadle, both of San Francisco, Cal., for plaintiff.

A. B. Dunne, of San Francisco, Cal., for defendant.

HARRIS, District Judge.

An oral motion for an inspection of statements and reports allegedly made by defendant's employees, designated members of the train crew, was presented during the pretrial conference, and the Court, after a consideration of the memoranda of law submitted by counsel and the representations made by counsel for both parties, regularly denied the motion.

Thereafter, and during the course of the trial, plaintiff filed a written notice of motion predicated on Federal Rules of Civil Procedure, rule 34, 28 U.S.C.A. following section 723c, to produce statements of employees allegedly made by them in the usual or regular course of business supported by an affidavit of Allen Spivock, setting forth nine (9) specifications of alleged evidentiary matter which counsel for plaintiff indicated at the hearing were culled or compiled from the transcript of the first trial, the interrogatories and the depositions.

The avowed purpose of the motion as set forth in the notice is to assertedly "clarify the numerous conflicts in the testimony of defendant's said employees."

Defendant has filed herein, through its attorney A. B. Dunne, a responsive affidavit setting forth in substance that "there is no such report or any report in existence made 'in the usual course of business, shortly after said accident' to plaintiff of February 25, 1940, as distinguished from material obtained from the named individuals for the purpose of defending prospective or pending litigation and that there is no such report of any kind in existence as that specified."

Reliance is placed by the moving party upon Eiseman v. Pennsylvania R. Co., D.C., 3 F.R.D. 338. In Zeoli v. New York Central R. Co., 8 Fed.Rules Service, 663, 664, the Court in commenting on said case made clear the distinction applicable:

"In the Eiseman case Judge Kalodner required the production of documents *only to the extent that they could be properly called reports in the regular course of business.* I cannot see how statements taken by the claim department of a railroad from members of the crew or yard employees can be brought under the regular entry rule. It

is clearly indicated in Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719, that statements of the character involved in this motion are not under the regular entry rule and apparently the Court determined that these statements are not regular entries because they are not records made for the systematic conduct of the business as a business.

"I think that support for the position I take can be found in McCarthy v. Palmer, D.C.E.D.N.Y.1939, 29 F.Supp. 585; Conneway v. City of New York, D.C.E.D.N.Y. 1940, 32 F.Supp. 54; Kenealy v. Texas Co., D.C.S.D.N.Y.1939, 29 F.Supp. 502 and other cases.

"The motion is accordingly denied."

(Italics ours.)

In Palmer v. Hoffman, 318 U.S. 109, 114, 63 S.Ct. 477, 481, 87 L.Ed. 645, 144 A.L.R. 719, the Court said in part:

"In short, it is manifest that in this case those reports are not for the systematic conduct of the enterprise as a railroad business. Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading.

"It is, of course, not for us to take these reports out of the Act if congress has put them in. But there is nothing in the background of the law on which this Act was built or in its legislative history which suggests for a *moment that the business of preparing cases for trial* should be included." (Italics ours.)

In Hoffman v. Palmer, 2 Cir., 129 F.2d 976, 983, affirmed 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719, the Circuit Court had occasion to use this language:

"That the defendant railroad here had a regulation requiring its employees, when they were the actors in accidents, regularly to make reports of such accidents for use in probable litigation, did not suffice to include such reports within the 'regular course of business'."

The trend of the well considered decisions is indicated in Nelson v. Reid, D.C., 4 F.R.D. 199:

"I first consider the motion for production and discovery under Rule 34 of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, which motion was filed November 30, 1944. This motion should be denied. Stark v. American Dredging Co., D.C., 3 F.R.D. 300; Moore's Federal Practice, 1944 Supplement, at page 264, is authority for this statement; 'Nevertheless, as in the case of depositions under Rule 26, there is a growing tendency to prevent any inquiry into matters obtained by the adverse party in the preparation of his action or defense.' Cases are there cited for this statement. This statement of the law, as applied to this case, meets my approval."

In Creden v. Central R. Co. of New Jersey, D.C., 1 F.R.D. 168, 169, the Court disposed of a similar contention:

"Interrogatory 8 asks for the substance of statements made by witnesses and employees of the defendant to the defendant. In absence of any showing why plaintiffs cannot secure this information from the witnesses themselves by deposition or otherwise, there is no reason to permit plaintiffs to avail themselves of defendant's preparation of its case. See McCarthy v. Palmer, D.C., 29 F.Supp. 585, 586. The interrogatory is disallowed."

Again, in Piorkowski v. Socony Vacuum Oil Co., D.C., 1 F.R.D. 407, 408, the Court, although recognizing that the rule should be given a liberal interpretation, nevertheless made it clear that there are certain necessary limitations:

"However, at the oral argument counsel tacitly admitted that the statements in question do concern this case and were obtained by the defendant in the course of its preparation for trial. While the courts have made every effort to construe the rules for discovery as liberally as possible in order to permit all parties to obtain a full disclosure of the facts pertaining to the case, there have been established certain necessary limitations of the exercise of discovery powers. One of these limitations prevents the securing by one party of the results of the preparation for trial of another party. As was stated in McCarthy v. Palmer, D.C., 29 F.Supp. 585, 586: 'While the

Rules of Civil Procedure were designed to permit liberal examination and discovery, they were not intended to be made the vehicle through which one litigant could make use of his opponent's preparation of his case. To use them in such a manner would penalize the diligent and place a premium on laziness. It is fair to assume that, except the most unusual circumstances, no such result was intended.' See also Creden v. Central R. Co. of New Jersey, D.C., 1 F.R.D. 168; Byers Theaters Inc., v. Murphy, D.C., 1 F.R.D..286, 289; The Hazel S. (Olson v. New York Central R. Co.), D.C., 31 F.Supp. 745."

In Hickman v. Taylor, 3 Cir., 153 F.2d 212, 215, certiorari granted May 27, 1946, 66 S.Ct. 1337, the Court had occasion to review the host of District Court Decisions under Rules 26, 33 and 34.

This was an appeal from a judgment of the District Court for the Eastern District of Pennsylvania which adjudged the appellants guilty of criminal contempt and imposed sentence therefor. The appellants were two clients and their lawyer. The basis of the contempt order was their refusal to answer a certain interrogatory propounded by the plaintiff's counsel in a personal injury suit. They took the position that what was asked for was beyond the proper scope of the discovery process under the Federal Rules. The Court ruled against them and upon their disobedience of the order adjudged them guilty of contempt. It appeared that appellants answered all but one of the interrogatories. The interrogatory in question read as follows:

" '(38) State whether any statements of the members of the crews of the Tugs "J. M. Taylor" and "Philadelphia" or of any other vessel were taken in connection with the towing of the car float and the sinking of the Tug "John M. Taylor". Attach hereto exact copies of all such statements if in writing, and if oral, set forth in detail the exact provisions of any such oral statements or reports.' "

The Circuit Court, after a careful review of the authorities and the philosophy and purpose underlying the rules, concluded that a "privilege" attached, and in this connection the Court said:

"We are clear in our own minds, however, that 'privilege' as used in the Rules comprehends the material asked for in the interrogatory which is the foundation of this proceeding, namely, memoranda of talks with witnesses, signed statements made by witnesses, the lawyer's recollection of talks with witnesses. Our difficulty comes, not in any lack of confidence in our judgment upon the point, but in seeking a phrasing of our conclusion to give it wide enough scope without going too far. For instance, one is tempted to say that the lawyer's files are impregnable against any inquiry from outside. But that depends upon what the lawyer puts in them. A piece of a machine which has hurt someone, a document needed to show a fact, many things required in a lawsuit find their way from client's hands to lawyer's file and are not to be concealed until the day of trial for that reason. But here we are dealing with intangible things, the results of the lawyer's use of his tongue, his pen, and his head, for his client. This was talked about as the 'work product of the lawyer' in the argument of the case. This is a phrase which seems pretty well to describe what we are after, though we hesitate to adopt it as a label for our concept for fear that it may contain implications not now apparent to us. It does with fair accuracy describe what we are excluding here under the term privilege. It seems likewise to be about what is represented by the English law though the difference in phaseology of the rules makes reference only moderately helpful.

"The reason for this frank extension of privilege beyond testimonial exclusion rests on the same foundation that the rule of evidence does. It is the same foundation upon which we base the immunity of the judge for his official acts in that capacity. It is found again in the non-liability of judge, counsel and witnesses for defamation for what they say in the trial of a lawsuit. In none of these instances is the immunity based on the convenience of the individual judge, lawyer or client. It is rather, a rule of public policy, and the policy is to aid people who have lawsuits and prospective lawsuits. Those members of the public who have matters to be settled through lawyers and through litigation should be free to

make full disclosure to their advisers and to have those advisers and other persons concerned in the litigation free to put their whole-souled efforts into the business while it is carried on. The soundness of this policy is not capable of laboratory demonstration. Enunciated and applied as it necessarily is by members of the guild which derives incidental benefit from its application, it is open to the gibes of the cynical. We believe it is sound policy; we know that it is irrefutably established in the law. That the principle finds application in the facts presented to us on this appeal we are all thoroughly convinced.

"The order of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion."

In the light of all of the circumstances surrounding the motion, and the affidavits of the parties on file herein, plaintiff has not shown good cause for the granting thereof; accordingly, in view of the interpretation placed upon Rule 34 by well considered authorities, the motion should be, and the same is hereby denied.